UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JESSICA HEBERT                                                                CIVIL ACTION

VERSUS                                                                        NO: 10-0014

WYATT WILLIAMS, et al.                                                        SECTION "C" (5)

ORDER AND REASONS[1]

Before this Court comes Defendants' Motions for Summary Judgment. (Rec. Doc. 30). The Plaintiff opposes. (Rec. Doc. 32). Having considered the record, the memorandum of counsel, and applicable law, the motion is GRANTED for the following reasons.

I.  BACKGROUND

Plaintiff Jessica Hebert is an amputee who uses a prosthetic leg to assist and enhance her motor functions. (Rec. Doc. 32 at 3). On June 10, 2009, two Slidell Police officers received a complaint about an intoxicated individual at the Long Stay Motel. (Rec. Doc. 30-1 at 1). The officers identified Hebert as the intoxicated individual. *Id*. at 2. The officers claim to have warned Hebert that she would be arrested if the police received another complaint against her that night. *Id*. A few hours later, Slidell police officers responded to a complaint at a local bar regarding an intoxicated individual. *Id*. The officers identified the individual as Hebert and arrested her for disturbing the peace and public intoxication. *Id*. The officers reported that Hebert's speech was slurred and that she could not speak in coherent sentences. *Id*. The officers had to assist her with balance and walking once she was placed under arrest. (Rec. Doc. 32 at 3). Upon arriving at the

---

[1]Helen Meaher, a third year law student at Tulane University Law School assisted in preparing this Order and Reasons.

police department, Hebert allegedly refused to comply with the officers' instructions during the booking procedure. (Rec. Doc. 30-1 at 2). They claim she deliberately threw off her prosthesis and tried to throw herself on to the floor of the holding cell allegedly trying to harm herself in order to be released. *Id*.

The next day, Deputy Marshal Cranford and Deputy Marshal Clemons escorted Hebert and approximately ten other detainees to the Slidell City courthouse for their hearings. (Rec. Doc. 30-6). Hebert was placed at the front of the single file line during the walk because she was handicapped. (Rec. Doc. 32 at 4). Unlike the other detainees who were handcuffed and shackled at their feet, Hebert was only handcuffed. *Id*. Defendants' normal practice was to use the courthouse's handicapped ramp when escorting detainees from the jail to the courthouse, however on the day in question on-going construction obstructed the usual path between the jail and courthouse. *Id*. at 5. As a result, Cranford and Clemons used a different path to the courthouse, which involved the use of stairs. *Id*. Hebert was able to climb the stairs leading to the courthouse and attend her hearing, (Rec. Doc. 30-6 at 2), where the judge ordered Hebert back to jail, (Rec. Doc. 30-1 at 3).

Cranford and Clemons were also in charge of escorting Hebert and the detainees back to jail once the hearings ended. *Id*. As the arrestees began to exit, Hebert claims she expressed concern about her ability to descend the stairs to Deputy Cranford, who assured her that he would be there to assist her if necessary. (Rec. Doc. 32 at 6). Hebert was once again placed at the front of the single file line to return to the jail. (Rec. Doc. 30-1 at 3). While walking down the stairs, Cranford instructed the arrestees at the front of the line to stop walking in order to allow the remaining arrestees to catch up. (Rec. Doc. 30-6 at 3). Once stopped on the stairs, Hebert suddenly fell down the remaining three steps. (Rec. Doc. 31-1 at 4). Hebert was rushed to the hospital and treated for

her injuries. *Id.*

In her Complaint Hebert alleges that Defendants violated the Americans with Disabilities Act ("ADA") while she was under their custody and as result of their actions she suffered serious injuries. (Rec. Doc. 10 at 4). Defendants argue that Hebert has not demonstrated any violation of the ADA. (Rec. Doc. 30-1 at 6-11). Hebert has also asserted a claim under § 1983 alleging that her Eighth and Fourteenth Amendment rights were violated by the Slidell City Court Marshal's Office's policy towards disabled detainees as well as by Deputies Cranford and Clemons' deliberately indifferent behavior. (Rec. Doc. 10 at 4).

## II. LAW AND ANALYSIS

### A. *Standard of Review*

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact ." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See e.g., Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992).

### B. *Title II of the ADA*

#### *i. Applicable Legal Standards*

To prove a violation of Title II of the ADA, a plaintiff must show that (1) he is a qualified individual, (2) who was excluded from participation in or denied the benefits of services, programs, or activities of a public entity, and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability. *See e.g., Melton v. Dallas Area Rapid Transit*, 391 F. 3d 669, 671-72 (5th Cir. 2004); *Cole v. Velasquez*, 67 Fed. Appx. 252 (5th Cir. 2003); *Lightbourn v. County of El Paso*, 118 F.3d 421, 428 (5th Cir. 1997). In *Delano-Pyle v. Victoria, County, TX*, 302 F.3d 567 (5th Cir. 2002), the Fifth Circuit noted that a "plaintiff asserting a private cause of action for violations under the ADA ... may only recover compensatory damages upon a showing of intentional discrimination." *Id*. at 575. Punitive damages are unavailable. *Barnes v.Gorman*, 536 U.S. 181, 189-90 (2002). Furthermore, as this Court has previously ruled, individual-capacity claims are not allowed under the ADA. *McGuire v. Lafourche Parish Work-Release Facility*, 2009 WL 4891914 at *5 (E.D.La Dec. 4, 2009).

*ii. Analysis*

As an initial matter, since individual-capacity claims are not allowed under the ADA, Hebert's ADA claims against Cranford and Clemons must be dismissed. *See McGuire v. Lafourche Parish Work-Release Facility*, 2009 WL 4891914 at *5. In addition, Hebert's demands for punitive damages under the ADA must be dismissed. *Barnes v. Gorman*, 536 U.S. at 189-90. As Hebert only seeks compensatory damages in her complaint, she must establish intentional discrimination in order to prevail on her remaining ADA claims. *Delano-Pyle v. Victoria, County, TX*, 302 F.3d at 575.

Hebert has not produced any evidence suggesting that Defendants had the subjective intent to discriminate against her because of her disability. Interpreting the facts in the light most favorable to Hebert, Defendants made Hebert descend the courthouse stairs when they knew that she was disabled and that she had unspecified doubts about her ability to make it down the stairs. However, Hebert admits that Defendants' normal practice was to use the courthouse's handicapped ramp when escorting detainees from the jail to the courthouse. (Rec. Doc. 32 at 5). Furthermore, Hebert admits that the ramp was not used in her case because of on-going construction, which obstructed the area between the ramp and the jail. *Id.* Since Hebert admits that the decision to use the stairs instead of the handicapped ramp was not made with the intention of discriminating against her. Hebert's remaining ADA claims must be dismissed.

## C. *The Federal Claim under 42 U.S.C. § 1983*

*i. Applicable Legal Standards*

Title 42, Section 1983 provides:

5

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

The Fifth Circuit has held that to state a prima facie case under 42 U.S.C.S. § 1983, the plaintiff must allege facts that show (1) that he has been deprived of a right secured by the Constitution and the laws of the United States, and (2) that the deprivation was caused by a person or persons acting under color of state law. *McGuire v. Lafourche Parish Work-Release Facility*, 2009 U.S. Dist. LEXIS 113767 (E.D.La. 2009). Actions taken under color of state law for purposes of § 1983 fall into two categories: those performed in an individual capacity and those performed in an official capacity.

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999). To establish liability against a government official in his or her "official capacity," a § 1983 plaintiff must show that a policy or custom formulated and implemented by the official "must have played a part in the violation of federal law." *Hafer v. Melo*, 502 U.S. 21, 28 (1991). That is, "the plaintiff must show that the municipality has a policy or custom that caused his injury." *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007). "A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity ." *Colle v. Brazos County, TX*, 981 F.2d 237, 245 (5th Cir. 1993). Rather, a plaintiff must identify the policy or custom that was adopted or maintained with objective deliberate indifference to his constitutional rights. *Scott v. Moore*, 114 F.3d 51, 54 (5th Cir. 1997).

Individual-capacity claims are different and require specific allegations of misconduct by

some officials that give rise to a constitutional violation. *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002). "Personal involvement is an essential element of" this cause of action. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). So, a supervisor may not be held personally liable under § 1983 based on a theory of vicarious liability. *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987).

*ii. Analysis*

a. Claims Against Marshal Wyatt Williams

Although Hebert is suing Marshal Williams in both his individual and official capacities, she had not alleged that Williams had any personal involvement with the events in question. Since it is uncontested that Williams had no personal involvement with Hebert's injury and since there is no vicarious liability under § 1983, all individual capacity claims against Marshal Williams must be dismissed.

Hebert has also alleged that Marshal Williams failed to adequately train and supervise Deputies Cranford and Clemons. (Rec. Doc. 10). For Hebert to prevail on this claim she must show that: (1) Williams failed to train or supervise Cranford and Clemons; (2) there is a causal connection between the alleged failure to train or supervise and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to Hebert's rights. *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001). Deliberate indifference can be shown by either the failure to train in response to repeated violations of federal law or in the face of an exceedingly obvious risk of such violations. *Board of County Com'rs of Bryan County, OK v. Brown*, 520 U.S. 397, 409 (1997).

Again Hebert has failed to produce evidence suggesting that Williams had any deliberate

indifference to Hebert's right to reasonable accommodation for her handicap. Hebert has supplied no evidence of past violations of federal law regarding the treatment of disabled detainees nor has she shown an obvious risk to detainees that required additional training. The courthouse was accessible to the handicapped and, in the absence of construction, the deputies used the handicapped ramp to transport detainees from the jail to the courthouse. (Rec. Doc. 32 at 5). As a result, Hebert has not shown that Marshal Williams failed to train any of his employees with deliberate indifference to her rights, which means her failure to train claims must be dismissed as well.

Finally, in order for Hebert to prevail on her official-capacity claim, she must identify a policy or custom that was adopted or maintained by Marshal Williams that was deliberately indifferent to her civil rights. However, Hebert has produced no such policy or custom. In fact, Defendants have established that it was customary at the Slidell City Court Marshal's Office for deputies to escort all prisoners to the courthouse via the handicapped ramp. (Rec. Doc. 32 at 5). Since Hebert has never alleged that this custom violated her civil rights, Hebert's official-capacity § 1983 claims against Marshal Williams must be dismissed. *See Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007).

b. Claims Against the Slidell City Court Marshal's Office

Likewise, since Hebert has not produced any official decision or policy of the Slidell City Court Marshal's Office that was the cause of any deprivation of her rights, her claims against it must also be dismissed.

c. Claims Against Deputies Cranford and Clemons under the 8th and 14th Amendments

Since Hebert was only a pretrial detainee and not a convicted prisoner at the time of her incident, she could not constitutionally be subjected to any form of punishment. *Hare v. City of Corinth, MS*, 74 F.3d 633, 639 (5th Cir. 1996). The Fifth Circuit has held that when a pretrial detainee challenges the constitutionality of his confinement he can attack either "the general conditions, practices, rules, or restrictions of pretrial confinement" or "a jail official's episodic acts or omissions." *Id.* at 643. Since Herbert has not produced any evidence that indicates that the Slidell City Court Marshal's Office officially required her to take the stairs rather than the handicapped ramp, her claims will be treated as challanges to the "episodic acts or omissions" of Deputies Cranford and Clemons. *Id.* (holding that a case should only be treated as a "jail condition" case if the challenged condition was officially imposed).

To prevail on these claims Hebert must show that Cranford and Clemons' acts or omissions were in deliberate indifference to Hebert's rights to adequate medical treatment or protection from harm. *Id.* at 647. To show that Cranford and Clemons' "episodic acts or omissions" were in deliberate indifference to the these rights, Hebert must show: (1) that Cranford and Clemons had subjective knowledge of facts that would support an inference of a substantial risk of serious harm; (2) that they actually drew that inference; and (3) their response to the risk indicates that they subjectively intended that harm to occur. *Tamez v. Matheny*, 589 F.3d 764, 770 (5th Cir. 2009). Subjective knowledge and intent may be inferred from the fact that the risk of harm was obvious. *Atteberry v. Nocona Gen. Hosp.,* 430 F.3d 245, 256 (5th Cir. 2005).

While Hebert argues that her condition was obvious, the appropriate question is whether Hebert's disability required an obvious accommodation to prevent serious harm. Defendants argue

9

that they were not aware of a substantial risk of harm to Hebert because they had witnessed her ascend the stairs earlier that day without incident. (Rec. Doc. 30-1 at 8). Hebert asserts that Defendants were subjectively aware that she was in substantial risk of serious harm because she informed Cranford that she "might not make it down the stairs." (Rec. Doc. 30-5 at 9-10). However, all Hebert's statement did was inform Cranford that Hebert had some doubts about her ability to descend the stairs. According to Hebert she told Cranford that sometimes she would have to "scoot down" stairs because of her prosthesis. *Id.* This statement did not convey the subjective knowledge that Hebert's prosthesis made descending stairs a substantial risk of serious harm, but rather only informed Cranford that Hebert might have difficulty descending the steps.

Even assuming that Defendants did have the required subjective knowledge, Hebert has produced no evidence suggesting that Defendants subjectively intended any harm to occur to Hebert. On the other hand, Defendants have shown that they had taken some steps to accommodate Hebert's disability. Specifically, Defendants have shown that they did not shackle Hebert's ankles out of consideration of her prosthesis, (Rec. Doc. 32-2 at 5), and according to Hebert, Cranford explicitly assured her that he would assist her if she needed help descending the stairs, (Rec. Doc. 30-5 at 11). The fact that he ultimately failed to provide the promised assistance may establish negligence on his part, but Hebert has produced no evidence suggesting that Cranford intentionally withheld the assistance promised.

As a result of Hebert's failure to produce any evidence suggesting that Defendants had the requisite intent to establish deliberate indifference, her § 1983 claims against Deputies Cranford and Clemons must be dismissed. Consequently, no analysis of qualified immunity is required.

*C. State Law Claims*

Since all of Hebert's federal law claims have been dismissed, this Court no longer has subject matter jurisdiction over the case. The First Amended Complaint asserted that Hebert was domiciled in the Eastern District and jurisdiction was asserted under 28 U.S.C. 1331, federally-based claims. (Rec. Doc. 10). While Plaintiff's several state law claims were properly asserted under this Court's pendant jurisdiction pursuant to 28 U.S.C. § 1367, the Court must now decide whether to retain pendant jurisdiction over those state law causes of action. The Supreme Court has held that "when the federal claims have dropped out of a lawsuit in its early stages and only state law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (quoting *Mine Workers v. Gibbs,* 383 U.S. 715 (1966). Here, Hebert's federal claims have been dismissed prior to trial, so this Court declines to exercise pendant jurisdiction over her remaining state law claims.

### III. CONCLUSION

ACCORDINGLY,

IT IS SO ORDERED that the Defendants' Motion for Summary Judgment is GRANTED as to all of Plaintiff's federal claims.

IT IS FURTHER ORDERED that Plaintiff's state law claims are DISMISSED without prejudice.

New Orleans, Louisiana, this 29th day of November, 2010.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

11